IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

------------------------------------------------------------X
MARY CONNER, Individually and as the
representative of a class of similarly situated persons,

                                  Plaintiff,

                  Case No. 22-cv-

            - against -

MINT MUSEUM OF ART,

                                 Defendant.
------------------------------------------------------------X

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1. Plaintiff, Mary Conner ("Plaintiff" or "Conner"), brings this action on behalf of herself and all other persons similarly situated against Mint Museum of Art (hereinafter "Mint Museum" or "Defendant"), and states as follows:

2. Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using her computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision; others have no vision.

3. Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to the American Foundation for the Blind's 2015 report.

4. Plaintiff brings this civil rights action against Mint Museum for their failure to design, construct, maintain, and operate their website to be fully accessible to and independently

1

usable by Plaintiff and other blind or visually-impaired persons. Defendant is denying blind and visually-impaired persons throughout the United States with equal access to the goods and services Mint Museum provides to their non-disabled customers through http//:www.Mintmuseum.org (hereinafter "Mintmuseum.org" or "the website"). Defendant's denial of full and equal access to its website, and therefore denial of its products and services offered, and in conjunction with its physical locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act (the "ADA").

5. Mintmuseum.org provides to the public a wide array of the goods, services, price specials, employment opportunities and other programs offered by Mint Museum. Yet, Mintmuseum.org contains thousands of access barriers that make it difficult if not impossible for blind and visually-impaired customers to use the website. In fact, the access barriers make it impossible for blind and visually-impaired users to even complete a transaction on the website. Thus, Mint Museum excludes the blind and visually-impaired from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life, allowing blind and visually-impaired persons to fully and independently access a variety of services.

6. The blind have an even greater need than the sighted to shop and conduct transactions online due to the challenges faced in mobility. The lack of an accessible website means that blind people are excluded from experiencing transacting with defendant's website and from purchasing goods or services from defendant's website.

7. Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which makes use of alternative text, accessible forms, descriptive links, resizable text and limits the usage of tables and JavaScript, Defendant has chosen

2

to rely on an exclusively visual interface. Mint Museum's sighted customers can independently browse, select, and buy online without the assistance of others. However, blind persons must rely on sighted companions to assist them in accessing and purchasing on Mintmuseum.org.

8. By failing to make the website accessible to blind persons, Defendant is violating basic equal access requirements under both state and federal law.

9. Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons.

10. Plaintiff relocated to Charlotte, NC about a year ago and with the easing of Covid restrictions, is eager to explore the city and its many offerings. Plaintiff browsed and intended to schedule a visit and purchase an online ticket to the Mint Museum on a weekend in late June, 2022 and intended to make a purchase of the Museum Nerd Hoodie on Mintmuseum.org. However, unless Defendant remedies the numerous access barriers on its website, Plaintiff and Class members will continue to be unable to independently navigate, browse, use, and complete a transaction on Mintmuseum.org.

11. Because Defendant's website, Mintmuseum.org, is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in Mint Museum's policies, practices, and procedures so that Defendant's website will become and remain accessible to blind and visually-impaired consumers. This complaint also seeks compensatory damages to compensate Class members for having been subjected to unlawful discrimination.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, and 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C. § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. See 28 U.S.C. § 133(d)(2).

13. This Court also has supplemental jurisdiction over pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under State Law.

14. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 144(a) because Plaintiff resides in this District, Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District.

15. Defendant is registered to do business in the State of North Carolina and has been conducting business in North Carolina, including in this District. Defendant maintains Brick-and-mortar places of accommodation in this District which are subject to personal jurisdiction in this District. Defendant also has been and is committing the acts alleged herein in this District and has been and is violating the rights of consumers in this District and has been and is causing injury to consumers in this District. A substantial part of the act and omissions giving rise to Plaintiff's claims have occurred in this District.

## PARTIES

16. Plaintiff is, and has been at all relevant times, a resident of Mecklenburg County, State of North Carolina.

4

17. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Plaintiff, Mary Conner, cannot use a computer without the assistance of screen reader software. Plaintiff, Mary Conner, has been denied the full enjoyment of the facilities, goods and services of Mintmuseum.org, as well as to the facilities, goods and services of Defendant's brick and mortar locations, as a result of accessibility barriers on Mintmuseum.org.

18. Defendant, Mint Museum of Art, is a North Carolina Domestic non-profit corporation with its principal place of business located at 2730 Randolph Road, Charlotte, NC 28207.

19. Defendant owns and operates the Mint Museum (hereinafter, "Mint Museum" or "Museum"), which is a place of public accommodation. Mint Museum is located in Mecklenburg County, NC.

20. Mint Museum provides to the public important and enjoyable goods and services such as the ability to visit the museum to view, touch, and feel works of art, visit the museum store to make purchases, sign up for programs offered by the museum, purchase tickets, as well as purchase various products in the museum store, amongst the many goods and services offered by the Mint Museum. Defendant also provides to the public a website known as Mintmuseum.org which provides consumers with access to an array of goods and services offered to the public by the Mint Museum, including, the ability to learn about the services provided at the Museum, the ability to make online bookings and purchase tickets for visiting the Museum on specific dates, the ability to browse and learn about the current exhibitions, and the ability to access the Museum Store and make purchases of clothing, art exhibition related products, home décor, jewelry, craft and design, and other related products which are offered for sale – all with the click of a mouse. The Website also lets the visitor **make purchases, learn about**

5

promotions, and learn about Mint Museum and information about the Museum locations, and times of operation, among other features. The inaccessibility of Mintmuseum.org has deterred Plaintiff from scheduling a visit and purchasing an online ticket to the Mint Museum on a weekend in late June, 2022 and from making a purchase of the Museum Nerd Hoodie.

21. Defendant's locations are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Defendant's website is a service, privilege, or advantage that is heavily integrated with Defendant's physical Museum and operates as a gateway thereto.

## **NATURE OF THE CASE**

22. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

23. The blind access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen. Except for a blind person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a blind person can independently access the Internet. Unless websites are designed to allow for use in this manner, blind persons are unable to fully access Internet websites and the information, products and services contained therein.

24. For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind user is unable to access the same content available to sighted users.

25. Blind users of Windows operating system-enabled computers and devises have several screen-reading software programs available to them. Job Access With Speech, otherwise

known as "JAWS" is currently the most popular, separately purchase and downloaded screen-reading software program available for blind computer users.

26. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible. Many Courts have also established WCAG 2.0 as the standard guideline for accessibility. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including but not limited to: adding invisible alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that blind persons can easily navigate the site. Without these very basic components, a website will be inaccessible to a blind person using a screen reader.

**FACTUAL ALLEGATIONS**

27. Defendant operates Mint Museum in North Carolina and provides art exhibits and related products for sale, amongst other products and services.

28. Mintmuseum.org is a service and benefit offered by Mint Museum in North Carolina and throughout the United States. Mintmuseum.org is owned, controlled and/or operated by Mint Museum.

29. Mintmuseum.org is a commercial website that offers products and services for

7

online sale that are available in the Mint Museum. The online Museum allows the user to browse and learn about the services provided at the Museum, including learning about current and future exhibitions, provides the user with the ability to make online bookings and purchase tickets for visiting the Museum on specific dates, and provides the user with the ability to access the Museum Store and make purchases of clothing, art exhibition related products, home décor, jewelry, craft and design, and other related products which are offered for sale, and perform a variety of other functions.

30. Among the features offered by Mintmuseum.org are the following:

(a) learning about Museum information including, allowing persons who wish to visit Mint Museum to learn their location, hours of operation, and phone numbers;

(b) an online Museum, allowing customers to learn about and book visits to the Museum on specific dates, and an online store allowing customers to make purchases of clothing, jewelry, craft and design, and home décor, amongst other products; and

(c) learning about the company, learning about shipping and return policies, learning about career opportunities, and learning about promotions.

31. This case arises out of Mint Museum's policy and practice of denying the blind access to Mintmuseum.org, including the goods and services offered by Mint Museum through Mintmuseum.org. Due to Mint Museum's failure and refusal to remove access barriers to Mintmuseum.org, blind individuals have been and are being denied equal access to Mint Museum, as well as to the numerous goods, services and benefits offered to the public through Mintmuseum.org.

32. Mint Museum denies the blind access to goods, services and information made available through Mintmuseum.org by preventing them from freely navigating Mintmuseum.org.

33. Mintmuseum.org contains access barriers that prevent free and full use by Plaintiff and blind persons using keyboards and screen-reading software. These barriers are pervasive and include, but are not limited to: lack of alt-text on graphics, inaccessible drop-down menus, the lack of navigation links, the lack of adequate prompting and labeling, the denial of keyboard access, empty links that contain no text, redundant links where adjacent links go to the same URL address, and the requirement that transactions be performed solely with a mouse.

34. Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen-reader can speak the alternative text while sighted users see the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on Mintmuseum.org that lack a text equivalent. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics (screen-readers detect and vocalize alt-text to provide a description of the image to a blind computer user). As a result, Plaintiff and blind Mintmuseum.org customers are unable to determine what is on the website, browse the website or investigate Mint Museum' web pages and/or make purchases.

35. Mintmuseum.org also lacks prompting information and accommodations necessary to allow blind shoppers who use screen-readers to locate and accurately fill-out online forms. On a shopping site such as Mintmuseum.org, these forms include search fields to use an online calendar to schedule visits and purchase tickets, search fields used to locate products in the Museum Store, search fields used to select color, size, and quantity, and fields used to fill-out personal information, including address and credit card information. Due to lack of adequate labeling, Plaintiff and blind customers cannot make purchases or inquiries as to Defendant's

9

merchandise and locations, nor can they enter their personal identification and financial information with confidence and security.

    36. Specifically, when Plaintiff, using JAWS, attempted to make a purchase, she encountered the following problems:

1. Plaintiff did not receive verbal notification when she attempted to add items to the shopping cart. When selecting the "Add to Cart" button nothing is announced and Plaintiff did not know if the button functions. Sighted persons can see a number appear on the shopping cart symbol at the top of the page, but Plaintiff was not aware of this action and had no idea if the button functions or not. This is a critical error.
2. Plaintiff was unable to schedule a visit to the Museum or purchase tickets. Plaintiff wanted to visit the Museum on June 25 or 26. However, she encountered several critical errors which prevented her from scheduling a visit or purchasing a ticket. First of all, the "Visit" mouse over drop-down link cannot be activated with a keyboard and screen reader. When a sighted persons hovers their mouse over the word "Visit," a drop-down submenu appears with numerous links including "Plan Your Visit," "Purchase Admission Tickets," and many more links. However, these links are not read by screen readers and Plaintiff and other blind visitors to the website are unable to access the links. Moreover, even if Plaintiff was able to access the links, she would not be able to purchase tickets for any date in the future. The "Other Dates" link which brings up a calendar graphic is not read by screen readers and is completely skipped over.
3. Plaintiff was unable to access any of the links at the top of the page, not just the "Visit" link. All of the links have drop-down submenus which are accessible when a mouse is hovered over them. However, none of them are accessible for blind screen reader users. Consequently, Plaintiff and other blind visitors to the website cannot perform any function on the website.
4. Plaintiff was unable to access the "10% Off" pop-up window. When a sighted person first enters the website, the pop-up window appears and the visitor can sign up to get a promotional discount. However, Plaintiff and other blind visitors to the website are unable to take advantage of this discount because focus does not move into the pop-up window and the promotion is not announced. They have no idea that a promotion exists and are therefore, forced to pay full price

Consequently, Plaintiff and blind visitors to the website are unable to complete a transaction.

    37. On Mintmuseum.org, blind customers are not aware if the desired products have been added to the shopping cart because the screen-reader does not indicate the type of

10

product or quantity. Therefore, blind customers are essentially prevented from purchasing and product or booking any service on Mintmuseum.org.

38. Furthermore, Mintmuseum.org lacks accessible image maps. An image map is a function that combines multiple words and links into one single image. Visual details on this single image highlight different "hot spots" which, when clicked on, allow the user to jump to many different destinations within the website. For an image map to be accessible, it must contain alt-text for the various "hot spots." The image maps on Mintmuseum.org's menu page do not contain adequate alt-text and are therefore inaccessible to Plaintiff and the other blind individuals attempting to make a purchase. When Plaintiff tried to access the menu link in order to make a booking and purchase, she was unable to access it completely.

39. Moreover, the lack of navigation links on Defendant's website makes attempting to navigate through Mintmuseum.org even more time consuming and confusing for Plaintiff and blind consumers.

40. Mintmuseum.org requires the use of a mouse to complete a transaction. Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Plaintiff and blind people, it must be possible for the user to interact with the page using only the keyboard. Indeed, Plaintiff and blind users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another. Thus, Mintmuseum.org's inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently navigate and/or make purchases and bookings on Mintmuseum.org.

41. Due to Mintmuseum.org's inaccessibility, Plaintiff and blind customers must in turn spend time, energy, and/or money to make their purchases at a Mint Museum. Some blind customers may require a driver to get to the Museum or require assistance in navigating the

11

Museum. Unfortunately, Plaintiff could not even locate a Museum location on the website. By contrast, if Mintmuseum.org was accessible, a blind person could independently investigate products and programs and make purchases and/or reservations via the Internet as sighted individuals can and do. According to WCAG 2.0 Guideline 2.4.1, a mechanism is necessary to bypass blocks of content that are repeated on multiple webpages because requiring users to extensively tab before reaching the main content is an unacceptable barrier to accessing the website. Plaintiff must tab through every navigation bar option and footer on Defendant's website in an attempt to reach the desired service. Thus, Mintmuseum.org's inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently make purchases and bookings on Mintmuseum.org.

42. Mintmuseum.org thus contains access barriers which deny the full and equal access to Plaintiff, who would otherwise use Mintmuseum.org and who would otherwise be able to fully and equally enjoy the benefits and services of Mint Museum in North Carolina and throughout the United States.

43. Plaintiff, Mary Conner, has made numerous attempts to complete a booking and make a purchase on Mintmuseum.org, most recently on June 11, 2022, but was unable to do so independently because of the many access barriers on Defendant's website. These access barriers have caused Mintmuseum.org to be inaccessible to, and not independently usable by, blind and visually-impaired persons. Amongst other access barriers experienced, Plaintiff was unable to schedule a visit and purchase an online ticket to the Mint Museum on a weekend in late June, 2022 and unable to make a purchase of the Museum Nerd Hoodie on the website.

44. Moreover, Plaintiff has visited many Museums in the past and enjoys purchasing museum merchandise. If Defendant's website was accessible, Plaintiff intends on visiting Defendant's Website in the future in order to try and schedule visits and purchase tickets

online for future visits to the Mint Museum. In addition, Plaintiff intends to make additional purchases of products from the museum store including jewelry, home décor, and local crafts in the future for delivery to her doorstep.

45. As described above, Plaintiff has actual knowledge of the fact that Defendant's website, Mintmuseum.org, contains access barriers causing the website to be inaccessible, and not independently usable by, blind and visually-impaired persons.

46. These barriers to access have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits and services of Mintmuseum.org and the Mint Museum.

47. Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

(a) constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

48. Defendant utilizes standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

49. Because of Defendant's denial of full and equal access to, and enjoyment of, the goods, benefits and services of Mintmuseum.org and Mint Museum, Plaintiff and the class have suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of defendant's conduct.

# CLASS ACTION ALLEGATIONS

50. Plaintiff, on behalf of herself and all others similarly situated, seeks certification of the following nationwide class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all legally blind individuals in the United States who have attempted to access Mintmuseum.org and as a result have been denied access to the enjoyment of goods and services offered in the Mint Museum, during the relevant statutory period."

51. Plaintiff seeks certification of the following North Carolina subclass pursuant to Fed.R.Civ.P. 23(a), 23(b)(2), and, alternatively, 23(b)(3): "all legally blind individuals in the State of North Carolina who have attempted to access Mintmuseum.org and as a result have been denied access to the enjoyment of goods and services offered in the Mint Museum, during the relevant statutory period."

52. There are thousands of visually-impaired persons in North Carolina. There are approximately 8.1 million people in the United States who are visually-impaired. *Id.* Thus, the persons in the class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

53. This case arises out of Defendant's policy and practice of maintaining an inaccessible website denying blind persons access to the goods and services of Mintmuseum.org and the Mint Museum. Due to Defendant's policy and practice of failing to remove access barriers, blind persons have been and are being denied full and equal access to independently browse, select and shop on Mintmuseum.org and by extension the goods and services offered through Defendant's website to Mint Museum.

54. There are common questions of law and fact common to the class, including without limitation, the following:

(a) Whether Mintmuseum.org is a "public accommodation" under the ADA;

(b) Whether Mintmuseum.org is a "place or provider of public accommodation" under the laws of North Carolina;

(c) Whether Defendant, through its website, Mintmuseum.org, denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the ADA; and

(d) Whether Defendant, through its website, Mintmuseum.org, denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the law of North Carolina.

55. The claims of the named Plaintiff are typical of those of the class. The class, similar to the Plaintiff, is severely visually-impaired or otherwise blind, and claims Mint Museum has violated the ADA, and/or the laws of North Carolina by failing to update or remove access barriers on their website, Mintmuseum.org, so it can be independently accessible to the class of people who are legally blind.

56. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the members of the class. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

57. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class members clearly predominate over questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

15

Case 3:22-cv-00269-FDW-DCK   Document 1   Filed 06/16/22   Page 15 of 20

58. Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

59. References to Plaintiff shall be deemed to include the named Plaintiff and each member of the class, unless otherwise indicated.

**FIRST CAUSE OF ACTION**
(Violation of 42 U.S.C. §§ 12181 *et seq.* – Title III of the Americans with Disabilities Act)

60. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 59 of this Complaint as though set forth at length herein.

61. Title III of the American with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12181(b)(2)(D)(I).

62. The Mint Museum located in North Carolina is a sales establishment and public accommodation within the definition of 42 U.S.C. §§ 12181(7)(H). Mintmuseum.org is a service, privilege or advantage of Mint Museum. Mintmuseum.org is a service that is by and integrated with the Museum.

63. Defendant is subject to Title III of the ADA because it owns and operates the Mint Museum.

64. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful

16

Case 3:22-cv-00269-FDW-DCK   Document 1   Filed 06/16/22   Page 16 of 20

discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

65. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

66. Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

67. In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

68. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their websites accessible, including but not limited

to ensuring adequate prompting and accessible alt-text. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

69. The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq*., and the regulations promulgated thereunder. Patrons of Mint Museum who are blind have been denied full and equal access to Mintmuseum.org, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

70. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

71. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Mintmuseum.org and Mint Museum in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq*. and/or its implementing regulations.

72. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the proposed class and subclass will continue to suffer irreparable harm.

73. The actions of Defendant were and are in violation of the ADA, and therefore Plaintiff invokes her statutory right to injunctive relief to remedy the discrimination.

74. Plaintiff is also entitled to reasonable attorneys' fees and costs.

75. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION
(Declaratory Relief)

76. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 75 of this Complaint as though set forth at length herein.

77. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that Mintmuseum.org contains access barriers denying blind customers the full and equal access to the goods, services and facilities of Mintmuseum.org and by extension Mint Museum, which Mint Museum owns, operates and/or controls, fails to comply with applicable laws including, but not limited to, Title III of the American with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, prohibiting discrimination against the blind.

78. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff and the class and against the Defendants as follows:

a) A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*;

b) A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website, Mintmuseum.org, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that Mintmuseum.org is readily accessible to and usable by blind individuals;

c) A declaration that Defendant owns, maintains and/or operates its website, Mintmuseum.org, in a manner which discriminates against the blind and which fails to

19

Case 3:22-cv-00269-FDW-DCK   Document 1   Filed 06/16/22   Page 19 of 20

provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*;

d) An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and her attorneys as Class Counsel;

e) Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff and the proposed class for violations of their civil rights under Federal and State laws;

f) Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by state and federal law;

g) For pre- and post-judgment interest to the extent permitted by law; and

h) For such other and further relief which this court deems just and proper.

This is the 15th day of June, 2022

        LAW OFFICES OF SANJAY R. GOHIL, PLLC

        By: /s/ Sanjay R. Gohil
            Sanjay R. Gohil
            NC State Bar No. 24250
            2435 Plantation Center Drive, Suite 200
            Matthews, NC 28105
            Telephone: (704) 814-0729
            Facsimile: (704) 814-0730
            E-mail: srg@gohillaw.com

        Counsel for Plaintiff

Of Counsel:

SHAKED LAW GROUP, P.C.

By:/s/Dan Shaked
Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
e-mail: ShakedLawGroup@Gmail.com

20

Case 3:22-cv-00269-FDW-DCK   Document 1   Filed 06/16/22   Page 20 of 20